Plaintiff instituted this suit to recover from defendant the sum of $109, together with legal interest thereon from October 10, 1940, until paid. It alleged it sold and delivered to defendant merchandise in the quantities, for the price and on the terms shown in the itemized statement attached to the petition. It alleged that defendant received the merchandise consisting of ladies' garments, placed same in stock and attempted to sell them. That on October 17, 1940, defendant paid to it $181, but he failed to pay the balance of $109.
Plaintiff further alleged that the garments were sold to defendant under the prevailing custom in the Coat and Suit industry that regardless of the date of delivery specified in the order, the order will remain in effect after that date until written cancellation is received from the buyer; and that defendant in placing the order sued on accepted these provisions and no written cancellation of the order has ever been received by plaintiff.
Plaintiff also alleged that defendant returned to it certain of the garments, of a value of the amount sued for here, but that it refused to accept them and returned them to defendant. It prayed for judgment in the amount sued for.
Defendant denied being indebted to plaintiff in any amount and set up as a defense the following alleged facts:
"5. Further answering, your respondent shows that he and his wife, while on a shopping trip to New York on or about July 25 and 26, 1940, ordered on open account various ladies' coats and suits from samples in the plaintiff's show-rooms, and it was understood that said garments would be delivered over a period of from three to four weeks, all of which will be more fully shown on the trial of this cause.
"6. Your respondent further shows that he had ordered by sample, and purchased similar garments from the plaintiff company since the year 1935 or 1936, and that it has been a custom by and between plaintiff and defendant, adopted over these years, for the defendant to return garments which did not match the style or quality of garments ordered from sample by defendant, which procedure was not objected to by plaintiff until this time; and that your defendant complied with his usual procedure and custom involved in the return of the garments sued on herein.
"7. Your respondent further shows that the garments returned herein were ordered by sample from plaintiff in New York by defendant, and as soon as possible after said garments were received in Shreveport, the said garments were examined and then it was discovered that same was not made or manufactured out of the same grade, style or quality of material as the sample from which your defendant ordered said garments, and your defendant also discovered that some of said garments were misfits; and that the said defects in the garments returned, rendered same absolutely useless to your defendant."
The lower court tried the case on these issues and rendered judgment rejecting plaintiff's demands. It is prosecuting this appeal from that judgment. *Page 413 
It is admitted by defendant he personally gave the order for the garments and there is no dispute over the price. There is likewise no dispute as to the time of delivery or over the admitted fact that plaintiff failed to ship all of the order. Plaintiff failed to ship several garments remaining on the order because defendant had returned some which had been shipped to him.
The sole and only question for determination is — did the garments shipped to defendant match the style and quality of the garments ordered by defendant from samples displayed to him by plaintiff? If not, was it due to defects of manufacture not discoverable within ten days after receipt, under the Code of Fair Competition for the Coat and Suit industry, entered into under authority of Title 1 of the National Industrial Recovery Act approved June 16, 1933, or the policy of NRDGA on Returns?
Plaintiff is a member of the Coat and Suit industry, governed by the Code of Fair Competition, and is subject to every provision of the Act adopted for that industry. The provision applicable to the case at bar is Paragraph 7 of Article 8 of that Code, under the title "Fair Trade Practice." It is as follows:
"No return merchandise shall be accepted for credit other than for defects of manufacture, delay in delivery, or for nonconformity with order, but in no event shall such returns be accepted unless made within five working days of receipt, except for defects of manufacture not discoverable within ten days after receipt."
The policy of National Retail Dry Goods Association on Returns, governing the adjustment of differences among ready-to-wear vendors, adopted January 21, 1937, provides:
"That return of merchandise from retailer to vendor should be made only where it is alleged that the merchandise is defective in workmanship or material, has not been delivered as agreed upon or for the nonconformity of any of the conditions of the order; that such returns shall be made within five working days after the receipt of the merchandise unless for good reason such a return within five days is neither practical nor reasonable. Failure to return within the said five days shall place the burden of proof of the reasonableness of such failure on the vendee. Returns which are made because of alleged defects in the merchandise with respect to, but not limited to, alleged defects in workmanship, material, fit, etc., not discoverable by ordinary, usual inspection, may be made at any time that such defects are actually discovered."
Since defendant admits ordering the garments and their delivery, the burden of proof is on him to show the defects entitling him to return the goods and receive credit for them, under the above quoted provisions.
The oral testimony was not taken down in the lower court and is presented here in an agreed statement of facts approved by the lower court. It is as follows:
"When this case came up for trial in the City Court, City of Shreveport, it was agreed by counsel for Plaintiff and Defendant that in lieu of the regular note of evidence an agreed statement of facts should be submitted, first to be approved by the Judge of the City Court, after which time this statement could be used by the Appellate Court. The facts are as follows:
"Plaintiff obtained depositions of witnesses in New York and when these depositions were offered by attorney for Plaintiff, Defendant's counsel objected to all statements made by these witnesses based on their opinions and conclusions of fact and law drawn by said witnesses; Defendant made the further objection that evidence offered to show custom in the Coat and Suit industry was not admissible for the reason that Plaintiff had not shown that Defendant was acquainted with said custom. The Trial Judge permitted the offering of the depositions subject to this objection.
"Mr. Joe Anisman is the owner and operator of Anisman's Ready-to-Wear, located at 609 Texas Street, Shreveport, Louisiana, who has been in the ladies' ready-to-wear business in Shreveport for twenty years or more. That Mr. and Mrs. Joe Anisman made a shopping trip to New York City in July, 1940, and while there ordered ladies' coats from sample in Plaintiff's show-rooms on open account, amounting to a total price of $290.00. That a copy of the order dated July 25th and July 26th, 1940, filed in evidence, shows that this merchandise could be shipped `as ready' over a period of three or four weeks. Defendants received the merchandise in eight express shipments, dated at New York City, beginning with August 3, 1940, and ending with September 14, 1940. Mr. Anisman testified that these shipments arrived in Shreveport within three or four days after they left New York. Defendant retained and paid for all merchandise except *Page 414 
eight ladies' coats, valued at $109.00, which were returned to Plaintiff and upon which the Plaintiff has based its suit.
"Mr. Anisman testified that these coats were reshipped to Plaintiff by express from Shreveport on September 12, 1940, and arrived in New York City on September 17, 1940, and accepted by the Plaintiff on said date. (See express receipts filed in evidence).
"Mr. Anisman testified that he purchased the coats by sample and that he had been doing business with Plaintiff from 1935 or 1936, and it had been a custom between Plaintiff and Defendant, which was adopted over these years, to permit him to return merchandise which did not match the style or quality ordered from sample by him. That the coats returned and sued on herein were defective; some were short in front and some were long in the back and some baggy. One had faded and was shedding around the collar, and that the coats in this condition were immediately noticeable. That the first coat which he rejected was received in the second shipment of August 8, 1940; that one or two coats were misfits and this was not noticeable until a customer sought to buy the coats and then it was discovered that they were misfits; namely, that they were either under-size or over-size. Mrs. Anisman corroborated her husband in the above testimony.
"Mr. and Mrs. Anisman testified that they had returned merchandise to plaintiff since the years 1935 or 1936, which they found defective, and that plaintiff never complained at the time coats were returned except in this instance. (See express receipts filed in evidence by defendants showing return of merchandise in prior years). The attorney for plaintiff objected to this offering on the ground that what transpired between plaintiff and defendant in prior years was not pertinent to this case. (Trial Judge overruled this objection).
"Defendant testified that he did not return each coat as rejected but waited for other coats to arrive so that if any other defective coat or coats showed up, all could be shipped at one time in order to save the expense of express charges. This being the same procedure he had followed since he commenced doing business with plaintiff in the years 1935 or 1936. That prior to July, 1940, he had returned defective coats to the plaintiff covering a period of time from one week to four weeks after receiving them.
"That the coats returned were defective and useless to him or his trade.
"Mr. Anisman said that he knew of no custom in the Coat and Suit industry which required him to make written cancellation of an order before returning defective merchandise.
"Counsel for plaintiff and defendant agree that all of the documents which were filed in this suit on the day of trial in the City Court be considered a part of the record of this suit, subject to the objections as hereinabove stipulated."
The testimony offered by plaintiff is all in the form of depositions and, other than the proof that plaintiff is governed by the Code of Fair Competition above referred to, consists of the testimony of the Secretary of plaintiff, who also acts as General Manager and Credit Manager, and an employee whose duties are to examine garments after manufacture and look for damages and defects in the material and as to the proper size and fit. They both testified that the garments returned by defendant were carefully examined and no defects in manufacture or fit or otherwise were found in them.
There were eight different shipments of the ordered garments, the first on August 3rd and the last on September 14th. The returned garments were shipped by defendant on September 12th. The last five shipments by plaintiff to defendant were on August 26th, 28th and 30th, and September 7th and 14th. There were two shipments between August 3rd and 21st. The garments shipped on September 14th were not returned by defendant.
While we are of the opinion the Code of Fair Competition and the policy of NRDGA, the pertinent parts of which we have quoted, prevail over any custom existing between defendant and plaintiff, as claimed by defendant, we doubt the necessity of invoking the quoted provisions for the reason that defendant did not have the right to return the goods and receive credit for them unless he could show by a preponderance of testimony that they were defective in material, make or fit, or were not a match to the samples from which he gave the order for the garments. He has failed to produce a preponderance of the testimony to show this fact. He and his wife testified to the defects and plaintiff's General Manager and its examiner testified to the contrary. Neither plaintiff nor defendant saw fit to use disinterested witnesses to prove their contentions. The burden of proof to show the *Page 415 
defects was on defendant and he has failed to carry that burden.
If plaintiff did violate the law provided in the Code of Fair Competition by allowing defendant to return goods in previous years long after they had been delivered to him, we doubt if it could create a custom which could have a legal effect, for a custom created by constant or frequent violation of a law can never prevail as a binding and legal custom in the courts of the land.
We are convinced that defendant has failed to prove its special defense and that plaintiff has made out its case.
It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff against defendant in the sum of $109, with legal interest thereon from October 10, 1940, until paid and for all costs of this suit.